UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| LAVELLE RENARD WILLIAMS, JR., | |
| Plaintiff, | Case No. 21-11578 |
| | Honorable Shalina D. Kumar |
| v. | Magistrate Judge Elizabeth A. Stafford |
| KAYLA ROE et al., | |
| Defendants. | |

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 73)**

Plaintiff Lavelle Renard Williams, Jr. sued the City of Detroit, as well as defendant police officers Kalya Roe, Matthew Miller, Alejandro Vela, and several other Detroit police officers ("Individual Defendants")[1] under 42 U.S.C. §§ 1983 and 1985 for alleged violations of Williams' constitutional rights in connection with a shooting and subsequent criminal prosecution. ECF No. 1. Defendants move for summary judgment on all claims. ECF No. 73. The parties fully briefed the motion, and the Court heard oral argument on February 12, 2024. ECF Nos. 73, 75, 77. For the reasons below, the Court grants defendants' motion.

---

[1] These officers are Lamont Nelson, J. Reynoso, D. Kline, B. Atkinson, J. Sayles, A. Williams, R. Dyas, D. Cross, Brent Shur. ECF No. 1.

## I.  Background

This action stems from an underlying criminal case involving a 2018 shooting. On August 7, 2018, Diamond Walton was sitting in her car waiting for her boyfriend, Benson Harris-Lindsey, when she observed two individuals aim guns at her as they drove by in a black Kia. ECF No. 73-2, PageID.3971-78, 3981-82. After Harris-Lindsey entered Walton's car and she started driving, gunfire struck the car. *Id.* at PageID.3985-90.

During the gunfire, Walton and Harris-Lindsey saw three individuals, whom they later-identified as Blackwell-Esters, Jackson, and Lavelle Williams,[2] standing outside the same black Kia shooting at them. *Id.* at PageID.3996; ECF No. 73-3, PageID.4004-05, 4011. A bullet struck Walton's leg before Walton managed to drive away. ECF No. 73-2, PageID.3996; ECF No. 73-3, PageID.4014-15. Walton and Harris-Lindsey then went to a nearby hospital, where Walton received medical care for her bullet wound. ECF No. 73-3, PageID.4017-18.

When Detroit police officers arrived at the scene, they found Walton's car with bullet holes on the driver's side. ECF No. 73-5, 05:30-08:48. On a street nearby, they found 17 spent bullet casings from three different

---

[2] Blackwell-Esters and Jackson separately sued defendants in a companion case to this action. *See* Case No. 21-11586, ECF No. 1.

firearms. ECF No. 73-6, PageID.5806. Officer Marlon Carter's bodycam footage shows that while canvassing the area, Carter and another officer spoke with Dennis Nichols, who claimed to have witnessed the shooting. ECF No. 73-7, 01:56-02:38.

Nichols stated that he saw four Black men, armed with pistols, exit a "station wagon" and start shooting at a woman in a Chrysler 300. *Id.*, 02:20-03:13, 04:30-04:40. Nichols stated that based on the position of the vehicles at the time of the shooting, he believed that all of the bullet holes should be in the back of the vehicle. *Id.*, 03:50-04:10. Nichols said that the shooters got back into the station wagon and fled through an alley. *Id.*, 02:50-03:05. Carter's bodycam footage contains the only record of Nichols' description of the shooting.

Later that day, defendant Roe interviewed Walton at the hospital. ECF No. 73-9, PageID.4043. Walton recounted the shooting and told Roe that she did not know who the shooters were. *Id.* at PageID.4045-46. Roe wrote a report detailing the interview with Walton but did not submit it. *Id.*

Defendant Miller and other officers later arrived at the hospital and interviewed Walton again. *Id.* at PageID.4046, 4048. During this subsequent interview, Walton identified Blackwell-Esters and Jackson by their street names. *Id.* at PageID.4046-47. Roe's bodycam footage

transcript shows that after this subsequent interview, Miller told Roe not to put her initial interview with Walton in her report and Roe replied, "I'm gonna delete the whole report right now." ECF No. 75-12, PageID.6085. Roe testified that she submitted a revised report instead indicating that Walton identified two shooters. ECF No. 73-9, PageID.4046-47. Walton's initial statement that she could not identify the shooters does not appear in any record other than Roe's bodycam.

The officers also interviewed Harris-Lindsey, who identified Blackwell-Esters, Jackson, and a "third person" as the shooters. ECF No. 73-3, PageID.4019. Walton and Harris-Lindsey separately identified Blackwell-Esters and Jackson as the shooters when shown a photo of each. ECF No. 73-10. And after the hospital released Walton, she and Harris-Lindsey separately identified Lavelle Williams as the third shooter out of a pair of six pack photo-lineups. ECF No. 73-11.

As the officer in charge of the investigation, defendant Vela prepared and presented warrant requests for the arrest of Blackwell-Esters, Jackson, and Williams to the Wayne County prosecutor. ECF No. 73-15. On August 9, 2018, officers arrested Blackwell-Esters and Jackson at a residence where they found several weapons, including a rifle later tied to the shooting. ECF No. 73-13. On August 21, 2018, officers arrested Lavelle

Williams on an out-of-custody warrant. ECF No. 73-14. Blackwell-Esters, Jackson and Williams were jointly charged with two counts of assault with intent to murder and multiple felony firearms offenses. ECF No. 73-17.

The parties dispute whether defendants turned over Carter's and Roe's bodycam footage to the prosecutor for pre-trial disclosure to Williams. Defendant Vela testified that he provided the prosecutor with Carter's and Roe's bodycam footage, as well as everything else obtained as part of the investigation. ECF No. 73-18, PageID.4224. Discovery emails and testimony from Blackwell-Esters' defense attorney confirm that the prosecutor possessed Carter's bodycam footage, which the defense attorneys had the chance to review weeks before the trial started. ECF No. 73-19; ECF No. 75-10, PageID.6031, 6034; ECF No. 73-36, PageID.4323. However, the prosecutor's office later admitted that its files did not contain Roe's bodycam footage, ECF No. 75-10, PageID.6030, and the defense attorneys testified that before trial, they never actually received or were aware of Roe's bodycam footage and the initial interview with Walton. ECF No. 75-10, PageID.6031, 6035; ECF No. 73-31, PageID.4294, 4296.

At trial, Blackwell-Esters and Jackson were convicted of two counts of assault with intent to do great bodily harm and several felony firearm charges. ECF No. 73-17. Williams defended on grounds that he was

"merely present" during the shooting and was acquitted on all charges. ECF No. 73-20, PageID.4232. However, the court found by a preponderance of the evidence that he had violated the terms of his probation related to a prior arson conviction and thus sentenced Williams to 6.5-10 years' imprisonment. ECF No. 73-21, PageID.4242; ECF No. 73-22, PageID.4251-52. The defense attorneys aver that had they possessed Carter's and Roe's bodycam footage, they would have impeached Walton based on her identification. *See* ECF No. 75-10, PageID.6035; ECF Nos. 75-15, 75-16.

On July 6, 2021, Williams filed this action, asserting under 42 U.S.C. §§ 1983 and 1985 First, Fourth, Fifth and Fourteenth Amendment claims against the Individual Defendants based on the alleged suppression of exculpatory evidence and fabrication of evidence, and a claim for municipal liability against the City of Detroit. ECF No. 1. After defendants moved for summary judgment on all claims and Williams stipulated to dismiss nearly all claims in response, ECF Nos. 28, 73, 75, the only remaining claim is a § 1983 claim alleging that Roe, Miller, and Vela withheld exculpatory evidence at trial in violation of his Fourteenth Amendment due process rights.

## II.    Standard of Review

Summary judgment is appropriate where the evidence in the record, viewed in its entirety, shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). A party asserting either that "a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. Pro. 56(c)(1).

In reviewing a motion for summary judgment, the court must "view the factual evidence and draw all reasonable inferences in favor of the non-moving party." *Williams v. Mauer*, 9 F.4th 416, 430 (6th Cir. 2021) (citation omitted). Further, the court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The ultimate question for the court to determine "is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Payne v. Novartis Pham. Corp.*, 767 F.3d 526, 530 (6th Cir. 2014) (citing *Anderson*, 477 U.S. at 255).

The moving party bears the initial burden of "informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (citation omitted). If the moving party carries its burden, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A non-moving party has not made that sort of showing if "the record taken as a whole could not lead a rational trier of fact to find" in the party's favor. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (citation omitted).

## III.   Analysis

Defendants assert that qualified immunity shields them. "Qualified immunity is an affirmative defense that protects government officials from liability 'when a reasonable official in the defendant's position would not have understood his or her actions to violate a person's constitutional rights.'" *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015) (quoting *Meals v. City of Memphis*, 493 F.3d 720, 729 (6th Cir. 2007)). Officers are entitled to qualified immunity "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly

established at the time.'" *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

Defendants argue that they did not in fact violate Williams' constitutional rights. "In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Jackson v. City of Cleveland*, 925 F.3d 793, 813-14 (6th Cir. 2019). *Brady* likewise "requires a police officer to disclose evidence to the prosecutor" but "only when its exculpatory value is apparent to the officer." *D'Ambrosio v. Marino*, 747 F.3d 378, 389-90 (6th Cir. 2014) (cleaned up).

To establish a *Brady* claim, a plaintiff must show that "(1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed . . . ; and (3) prejudice must have ensued." *Jackson*, 925 F.3d at 814.

Here, the record evidence shows that prejudice did not ensue. Williams alleges that Roe, Miller, and Vela violated *Brady* by withholding exculpatory evidence at his trial, but he was undisputedly acquitted of the

charges.[3]  As defendants argue, "[c]ases from this [circuit] confirm that due

process claims based on the wrongful suppression of exculpatory evidence

are unavailable where, as here, the claimant was acquitted of his criminal

charges." *Offineer v. Kelly*, 454 F. App'x 407, 419 (6th Cir. 2011) (citing

*Lindsay v. Bogle*, 92 F. App'x 165, 170 (6th Cir. Feb. 3, 2004) and *McCune*

*v. City of Grand Rapids*, 842 F.2d 903, 907 (6th Cir. 1988)) (holding § 1983

plaintiff's "acquittal . . . means that any supposed *Brady* violation committed

by [a defendant-officer] was not prejudicial, and therefore not actionable").

Because Williams was acquitted at his criminal trial, he "could not have

been prejudiced . . . and his due process rights under the Fourteenth

Amendment were not violated" as a matter of law.  *Id.* at 418.  Defendants

are thus entitled to summary judgment in their favor on Williams' remaining

claim.

---

[3] For the first time at oral argument, Williams argued that a *Brady* violation
occurred at his probation revocation proceedings. Williams did not,
however, make such a claim in his complaint nor argue this in the briefing
for this motion.  Even if he did, he offered no response to defendants' well-
supported argument that there is no right to *Brady* materials for probation
revocation proceedings.  *See* ECF No. 73, PageID.3953; *DA's Office v.
Osborne*, 557 U.S. 52, 68-69 (2009) (holding a criminal defendant's *Brady*
right to the disclosure of exculpatory information does not extend beyond
the criminal trial). Therefore, any *Brady* claim connected to Williams'
probation proceedings is abandoned, and the issue is waived.  *See
Alexander v. Carter*, 733 F. App'x 256, 261 (6th Cir. 2018); *Lamson &
Sessions Co. v. Peters*, 576 F. App'x 538, 543 (6th Cir. 2014).

## IV.   Conclusion

For the reasons above, defendants' motion for summary judgment (ECF No. 73) is **GRANTED**.  The Court **DISMISSES WITHOUT PREJUDICE** Williams' §§ 1983 and 1985 claims against the City of Detroit and Individual Defendants, except for Williams' § 1983 Brady claim, which the Court **DISMISSES WITH PREJUDICE**. No claims remain, and the case is closed.

s/ Shalina D. Kumar<br>
SHALINA D. KUMAR<br>
United States District Judge

Dated: February 28, 2025